1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**

10

11  **S.E.L., by and through his guardian ad** )   NO. CV 19-4466-KS
    **litem Mercedes Zepeda Lopez,**          )
12                          **Plaintiff,**    )
                                              )   **MEMORANDUM OPINION AND ORDER**
13          **v.**                            )
                                              )
14                                            )
    **ANDREW M. SAUL**,[1] **Commissioner**   )
15  **of Social Security,**                   )
                                              )
16                         **Defendant.**     )
17  _____

18                **INTRODUCTION**

19

20      On May 22, 2019, S.E.L. ("Plaintiff"), by and through his Guardian ad Litem Mercedes

21  Zepeda Lopez ("Plaintiff's mother"), filed a Complaint seeking review of the denial of

22  Plaintiff's application for Supplemental Security Insurance ("SSI"). (Dkt. No. 1.) On August

23  14, 2019, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the

24  undersigned United States Magistrate Judge. (Dkt. Nos. 15-17.) On April 28, 2020, the parties

25  filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 23.)  Plaintiff seeks an order reversing and

26

27  _____
    [1]     The Court notes that Andrew M. Saul is now the Commissioner of the Social Security Administration.
28  Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended
    to substitute Andrew M. Saul for Nancy A. Berryhill as the defendant in this action.

                                1

1   remanding for further development of the record.  (Joint Stip. at 20.)  The Commissioner

2   requests that the ALJ's decision be affirmed.  (*Id.*)  The Court has taken the matter under

3   submission without oral argument.

4

5   **SUMMARY OF PRIOR PROCEEDINGS**

6

7        On December 7, 2015, Plaintiff's mother filed an application for SSI on Plaintiff's

8   behalf.  (*See* Administrative Record ("AR") at 134-43; Joint Stip. at 2.)  Plaintiff was born on

9   June 4, 2011,[2] and alleged disability commencing July 1, 2014 based on the following alleged

10  impairments:  attention deficit hyperactivity disorder ("ADHD"), aggressive hyperactivity,

11  and lack of sleep.  (AR 50, 134.)  After the Commissioner initially denied Plaintiff's

12  application (AR 50-59), he requested a hearing (AR 65).  Administrative Law Judge Edward

13  C. Graham ("the ALJ") held a hearing on April 10, 2018.  (AR 40.)  Plaintiff's mother testified.

14  (AR 44-49.)  On May 9, 2018, the ALJ issued an unfavorable decision, denying Plaintiff's

15  application.  (AR 14-34.)  On March 29, 2019, the Appeals Council denied Plaintiff's request

16  for review.  (AR 1-8.)

17

18  **SUMMARY OF ADMINISTRATIVE DECISION**

19

20       At the first step of the three-step sequential analysis used to determine whether a child

21  is disabled, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

22  the SSI application date.  (AR 23.)  At the second step, he determined that Plaintiff had the

23  following severe impairments:  conduct disorder, fetal alcohol spectrum disorder, and ADHD.

24  (*Id.*)  At the third step, he concluded that Plaintiff did not have an impairment or combination

25  of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R.

26

27  _____

    [2]      Plaintiff was three years old on the date the application was filed and thus met the agency's definition of a
28  "preschool" age child.  *See* 20 C.F.R. § 416.926a(g)(2)(iii).  On the date of the ALJ's decision, Plaintiff met the agency's
    definition of "school age."  *See* 20 C.F.R. § 416.926a(g)(2)(iv).

part 404, subpart P, appendix 1 (the "listings") (20 C.F.R. §§ 416.924, 916.925, 916.926). (*Id.*) The ALJ then found that Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of the listings.[3] (AR 23-34.) Accordingly, he determined that Plaintiff was not under a disability, as defined in the Social Security Act. (AR 34.)

## RELEVANT LAW

To qualify for childhood disability benefits, an "individual under the age of 18" must establish that s/he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906; *see Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1013 (9th Cir. 2003) (citation omitted). In assessing whether a child is disabled, an ALJ must use the following three-step sequential evaluation process:

(1) Is the child engaged in substantial gainful activity? If so, the child is not disabled. If not, proceed to step two.

(2) Does the child have a sufficiently severe medically determinable impairment or combination of impairments? If not, the child is not disabled. If so, proceed to step three.

(3) Do the child's impairments meet or medically equal an impairment listed in the listings, or functionally equal the listings (*i.e.*, "functional equivalence")? If so, and if the impairments satisfy the duration requirement, the child is disabled. If not, the child is not disabled.

---

[3] With respect to the six "functional equivalence domains," the ALJ specifically found that Plaintiff's impairments caused: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) less than marked limitation in caring for himself; (5) no limitation in being able to move about and manipulate objects; and (6) no limitation in health and physical well-being. (AR 27-34.)

3

1    20 C.F.R. §§ 416.924(a), 416.926, 416.926a; *see also* Social Security Ruling ("SSR") 09-1p,

2    2009 WL 396031, at *1 (S.S.A. 2009).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citation omitted).  "Even when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1988).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*, 495 F.3d at 630.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

1

2

3          **DISCUSSION**

4

5          The parties present one disputed issue:  whether the ALJ erred by failing to obtain an

6  expert in an appropriate field of medicine to evaluate the record in its entirety.  (Joint Stip. at

7  4.)  For the reasons discussed below, the Court finds that remand is necessary because the ALJ

8  erred by failing to secure a complete case evaluation from an appropriate specialist based on

9  the record in its entirety.

10

11  **I.      Legal Standard**

12

13          The Social Security Act states:

14

15          "In making any determination under this subchapter with respect to the disability

16                 of an individual who has not attained the age of 18 years . . . the Commissioner of

17                 Social Security shall make reasonable efforts to ensure that a qualified pediatrician

18                 or other individual who specializes in a field of medicine appropriate to the

19                 disability of the individual (as determined by the Commissioner of Social

20                 Security) evaluates the case of such individual."

21

22  42 U.S.C. § 1382c(a)(3)(I).  The Ninth Circuit has interpreted § 1382c(a)(3)(I) "to mean that

23  the ALJ is required to make a reasonable effort to obtain a case evaluation, based on the record

24  in its entirety, from a pediatrician or other appropriate specialist, rather than simply

25  constructing his own case evaluation from the evidence in the record." *Howard*, 341 F.3d at

26  1014.   In *Howard*, the Ninth Circuit held that although substantial evidence in the record

27  supported the ALJ's non-disability decision, the ALJ committed reversible legal error because

28  he "failed to rely on a 'case' evaluation.  Rather, he only relied on the individual evaluations

    and reports of each separate specialist, which pertained to each of their individual specialties.

    The ALJ made no effort to have [the claimant's] case evaluated in its entirety." *Id.*

The Commissioner subsequently issued Social Security Acquiescence Ruling ("SSAR") 04-1(9), 69 Fed. Reg. 22578 (Apr. 26, 2004). SSAR 04-1(9) states that under *Howard*, an ALJ may rely on a "case evaluation made by a State agency medical or psychological consultant that is already in the record" or "the testimony of a medical expert." 69 Fed. Red. At 22580. "When the ALJ relies on the case evaluation made by a State agency medical or psychological consultant, the record must include the evidence of the [consultant's] qualifications," and the ALJ "must ensure that the decision explains how the . . . consultant's evaluation was considered." *Id.* Acquiescence rulings are binding on all components of the Social Security Administration. *See* 20 C.F.R. § 402.35(b)(1)-(2); *Pinto v. Massanari*, 249 F.3d 840, 844 n.3 (9th Cir. 2001).

## II.    Opinions Reviewed by the ALJ

In March 2016, Plaintiff Roger A. Izzi, Ph.D. conducted a consultative examination on Plaintiff. (AR 367-72.) He described Plaintiff as hyperactive, and noted that Plaintiff appeared to enjoy a comfortable relationship with his mother until he was told to put an item down, at which point he began kicking and biting her. (AR 368.) Plaintiff impeded Dr. Izzi's attempt to conduct intelligence testing and he hid under a chair. (AR 370.) Dr. Izzi noted that Plaintiff performed poorly on testing, which he attributed to a lack of cooperation consistent with Plaintiff's underlying emotional problems. (*Id.*) He diagnosed Plaintiff with oppositional defiant disorder; he found no limitations in Plaintiff's ability to understand and respond to increasingly complex instructions, or in his communicative development. (*Id.*) He assessed that Plaintiff's ability to appropriately interact with others "may not be limited," based on his mother's statements that he got along well with others. (AR 371.) But he noted that Plaintiff's behavior at the office suggested that he was hyperactive and uncooperative; and his ability to engage in activity for a period of time and at a pace appropriate for his age level "may be limited by his overall level of functioning." (*Id.*)

//

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In April 2016, Plaintiff's file was evaluated by non-examining state agency consultant, Brady Dalton, Psy.D. in connection with his initial disability determination.  (AR 53-59.)  Dr. Dalton opined that Plaintiff had a "marked" limitation in the ability to attend and complete tasks; a "less than marked" limitation in the ability to acquire and use information; and no limitation in the ability to move about and manipulate objects, and in health and well-being. (AR 55-56.)

**III.    Analysis**

Plaintiff concedes that the record contains evaluations from two consultative doctors, Drs. Izzi and Dalton.  (Joint Stip. at 4-5.)  But he emphasizes that those evaluations were offered more than two years prior to the ALJ's May 2018 decision and argues that the ALJ was required to obtain a more recent medical expert or consultant to review the record in its entirety, including significant additional evidence submitted to the ALJ for the intervening two year period.  (*Id.* at 5-11.)

The Court declines to decide whether the ALJ's decision was supported by substantial evidence because, even if it was, remand is appropriate because the ALJ failed to secure a complete case evaluation from an appropriate specialist based on the record in its entirety. *Martinez v. Comm'r of Soc. Sec.*, Case No. CV 13-1092-JPR, 2014 WL 2606150, at *3 (C.D. Cal. June 11, 2014) (citing *Vega ex rel. J.G. v. Astrue*, Case No. EDCV 11-769-SP, 2012 WL 1144407, at *5 (C.D. Cal. Apr. 2, 2012), in which the court remanded for compliance with *Howard* even though substantial evidence supported ALJ's decision).  Indeed, the ALJ never mentioned *Howard* or SSAR 04-1(9) in his decision, nor did he cite any medical opinion that satisfied its requirements (*see* AR 20-34).  *See* 69 Fed. Reg. at 22580.

The Commissioner contends that the ALJ satisfied *Howard* and SSAR 04-1(9) because the ALJ partially relied on the opinions of Drs. Dalton and Izzi.  (Joint Stip. at 13-15.)

1    However, those opinions were offered more than two years *prior to* the hearing before the

2    ALJ and significant additional evidence was presented from the intervening period.  Therefore,

3    neither Dr. Dalton nor Dr. Izzi could evaluate Plaintiff based on the "record in its entirety"

4    because they did not consider any evidence Plaintiff submitted after April 2016.  *See Martinez*,

5    2014 WL 2606150, at \*3 (remanding for compliance with *Howard* because evaluating doctor

6    necessarily failed to evaluate Plaintiff based on the record in its entirety because he wrote his

7    report more than a year before the hearing and did not consider evidence Plaintiff later

8    submitted); *S.C.L.C. by and through Greene v. Astrue*, Case No. EDCV 12-049-JPR, 2013

9    WL 12204319, at \*3 (C.D. Cal. Jan. 14, 2013) (remanding because assuming evaluators were

10   qualified to make their assessments and the ALJ relied on their reports to satisfy *Howard*, they

11   necessarily failed to evaluate Plaintiff based on the "record in its entirety" because they wrote

12   reports a few months before the hearing and did not consider evidence Plaintiff submitted at

13   the time of the hearing or later to the Appeals Council); *Willmett ex rel. A.P. v. Astrue*, 2011

14   WL 3816284, at \*4 (E.D. Cal. Aug. 25, 2011) (noting that ALJ never mentioned *Howard* or

15   SSAR ruling, and remanding because, *inter alia*, state evaluators necessarily never saw some

16   record evidence); *Robinson v. Astrue*, 2010 WL 3733993, at \*4 (E.D. Cal. Sept. 21, 2010)

17   (remanding because to extent ALJ relied on state consultants' evaluations, they were prepared

18   two years before hearing and doctors did not consider evidence developed in those two years).

19

20        The ALJ's failure to secure a more recent case evaluation is not harmless error because

21   the evidence submitted from between April 2016 and the May 2018 decision date is arguably

22   material to an evaluator's view of the record and to the ALJ's disability determination.  For

23   instance, the record contains a May 2016 letter authored by Elyse Schoenwald, MSN, RN,

24   CPNP-PC, PMHS, of the behavior neurodevelopmental program at Stramski Children's

25   Development Center, noting that Plaintiff displayed maladaptive behaviors consistent with his

26   ADHD, severe mood dysregulation, temper tantrums, aggression, self-injurious behaviors,

27   oppositional defiant behaviors, and sensory processing deficits.  (AR 351.)   Schoenwald

28   recommended that Plaintiff undergo "intensive home behavioral interventions with parent

1
2
3
4

training." (*Id.*)  And a May 2016 letter authored by Anjuli R. Kumar, M.D., who treated Plaintiff at the Pediatric Gastroenterology Associates of Southern California, noted that Plaintiff exhibited "a lot of aggression and violence" in the office during their meeting, and he recommended evaluation and services to assist with Plaintiff's public conduct.  (AR 336.)

5

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Furthermore, in June 2016, Laura Vargas, M.S., completed a Functional Behavioral Assessment summarizing Plaintiff's treatment at Inspira Behavior and Advocacy Specialists. (AR 393-406.)  She observed as follows.  Plaintiff became upset when asked to wait or instructed to engage in tasks other than his current task; when upset, he engaged in self-injurious behaviors during uncontrollable environmental changes or changes in routine; and he struggled to control emotions when denied access to a preferred toy/object.  (AR 398.) Plaintiff demonstrated affection toward his family, but his interactions were often inappropriate, including tantrum behavior during assessment and profane language when given instructions.  (*Id.*)  Vargas opined that Plaintiff functioned "extremely low" in communication, community use, functional pre-academics, home living, health and safety, leisure, self-care, self-direction, and social functioning.  (AR 397-98.)  She recommended 18 hours per week of direct intervention and 12 hours per month of supervision.  (AR 406.)  In October 2016, Lauren Wu, M.D., reported that Plaintiff showed aggressive behavior during the duration of his 30 minute visit.  (AR 437.)  He cursed loudly at his mother, grabbed her face, screamed directly into her face and ear multiple times, hit his mother with a fist, and spit on his mother and on the examiner.  (*Id.*)  Dr. Wu noted that Plaintiff's behaviors had not improved during prior attempts at behavioral therapy.  (*Id.*)

23

24
25
26
27
28

Even assuming the ALJ considered these opinions or any other relevant evidence from between April 2016 and May 2018, it is clear that the record is replete with evidence that should have been, but was not, reviewed by an appropriate evaluator or medical specialist as part of the record in its entirety.  *See Martinez*, 2014 WL 2606150, at *3 (citing *Robinson* and *Godwin ex rel. V.E. v. Comm'r of Soc. Sec.*, 2010 WL 1337745, at *4 (D. Ariz. Mar. 31, 2010)

9

(noting that "while it is true that the ALJ did not give much weight to the medical examinations conducted by [certain doctors], that medical evidence was nonetheless in the record" and under *Howard* should have been considered as part of the "case-wide" evaluations by state agency doctors)).  Accordingly, this matter must be remanded for compliance with *Howard*.[4]

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 21, 2020

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

---

[4]      In *Howard*, unlike here, the claimant requested that a medical expert testify at the hearing and the ALJ declined. 341 F.3d at 1010-11, 1014 n.2.  Still, it is an ALJ's obligation to ensure that § 1382c(a)(3) is followed.  *See id.* at 1014 & n.2 (interpreting statute to require ALJ "to make a reasonable effort to obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply constructing his own case evaluation from the evidence in the record," and noting "distinction" between having expert evaluate claimant based on expert's particular specialty, and having an expert evaluate a claimant's case in its entirety").  Accordingly, the Commissioner's argument that the ALJ's decision should be upheld on the basis that the ALJ had no obligation to obtain a medical expert's review of the full record and that Plaintiff failed to ask the ALJ to supplement the record (Joint Stip. at 12-13), is contrary to the weight of authority.